UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-209-KSF

RANDALL J. COMBS, individually and as
    Administrator of the Estate of Joyce Ann Combs                            PLAINTIFF

vs.                           **OPINION AND ORDER**

MEIJER, INC., et al.                                                                   DEFENDANTS

* * * * * * * *

This matter is before the Court on the motion of the Defendants' (collectively "Meijer") for summary judgment. For the reasons discussed below, the motion will be denied.

I.    BACKGROUND

On a sunny Saturday evening, July 16, 2011, Joyce Combs and her adult son, Kevin, entered the Meijer Store at 2155 Paul Jones Way, Lexington, Kentucky, and walked straight from the entrance door down the grocery center aisle toward the back of the store. Kevin was walking slightly in front of his mother and did not see her fall and land face down. He claims he saw a "basketball-sized pool of liquid" on the floor after she was moved. The first Meijer employee to reach Mrs. Combs, Sean Endfinger, said he saw a small spot of clear liquid the size of the bottom of a foam coffee cup on the floor. He took a picture of the floor with his cell phone, but the clear liquid is not visible in the photograph. A second employee, Gary Tuggle, arrived quickly thereafter and wiped up the clear liquid from the floor using a paper towel. He described the liquid as being smaller than the palm of your hand. Robin Craycraft, the Second Shift Director on duty at the time, did not see the water but described it in her Customer Accident or Injury Report as "about the size of a quarter."

Kevin Combs drove his mother to the hospital where she was diagnosed with a left tibia fracture. On August 8, 2011, Mrs. Combs passed away as a result of pulmonary thromboemboli and deep vein thrombosis, complications of her left tibia fracture.

Meijer argues it is entitled to summary judgment based on employee testimony regarding observation and maintenance of the floor on the day of the accident. Robin Craycraft's affidavit states that she has been trained to perform inspections looking for hazardous conditions and that she completed her inspection of the area where Mrs. Combs fell "approximately 20 to 30 minutes before [she] received the telephone call in the Service Department about Joyce Combs' accident." DE 7-7. She also conducts monthly safety training meetings with various employees and includes instructions for the employees to be on the lookout for hazardous conditions on the floor of the store, among other safety instructions. *Id.*

Lavon Pasley's affidavit states that all Meijer employees "have been instructed and trained by Meijer to continually inspect the store premises for hazardous conditions" and to remove any condition or guard the area until it can be removed. DE 7-9. She works in the Frozen Food Aisles and would have walked by or near the accident area "dozens of times" during her shift from approximately 11:00 a.m. to 7:00 p.m. She never observed any liquid on the floor at or near the accident location that day. *Id.*

Mary Perry's affidavit reiterates the training provided to Meijer employees and states that she took a meal break at 5:20 p.m. on the date of the accident. She walked from a cash register to the grocery center aisle and down that aisle to Frozen Food aisle 3 where she obtained a pizza. She retraced her steps back to the checkout area. While walking through or near the location of Joyce Combs' accident twice, Ms. Perry did not observe any liquid on the floor. DE 7-10.

Woody Cherry's affidavit likewise reiterates the training of Meijer employees to watch out for hazardous conditions. Mr. Cherry clocked out for a break near the rear of the store at 5:38 p.m. He walked up the grocery center aisle to a refrigeration case between the Bakery Department and

2

the Frozen Food Department where he obtained an Arnold Palmer Tea with Lemonade and proceeded to the checkout area to pay for his drink. He then retraced his steps to the back of the store. He states he obtained his drink from the refrigeration case where the accident occurred and then walked past it after paying for his drink. He did not observe any debris or clear liquid on the floor during this time. DE 7-11.

Walter Liebengood, the Grocery Team Leader on duty, also described the training of Meijer employees and the safety meetings he conducts. Mr. Liebengood clocked out for a smoke break at 5:44 p.m. from the Dairy Department. He walked through grocery aisle 3, turned left and walked up the center aisle, "directly over the area of Mrs. Combs' accident, to the grocery entrance/exit doors." Shortly before 6:00 p.m., he returned, walked over the accident location a second time, and clocked back in at the Dairy Department at 5:57 p.m. He states he is "particularly observant for hazardous conditions on the floor of the store" because he has a herniated disc and several degenerative disks in the lumbar area of his low back. He did not observe any debris or liquid on the floor at or near the accident location during his two trips on the grocery center aisle. DE 7- 1, p. 13; DE7-12.

Sean Endfinger said he "received a call at about 6:15 p.m. advising a woman had fallen in the grocery center aisle" not far from his location. DE 7-1, p. 8. Robin Craycraft's accident report states the "Time of Incident" was 6:15 p.m. and that it was reported at 6:30 p.m.

## II.   ANALYSIS

### A.   Applicable Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor

3

of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"As this is a diversity action, Kentucky substantive law applies." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 442 (6th Cir. 2009). In *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431(Ky. 2003), the Kentucky Supreme Court changed the burden of proof in slip and fall cases to a burden-shifting approach. *Id.* at 436. Under *Lanier*, a plaintiff must show initially that: "(1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees." *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003). "Such proof creates a rebuttable presumption sufficient to avoid a summary judgment or directed verdict and 'shifts the burden of proving the absence of negligence, i.e., the exercise of reasonable care, to the party who invited the injured customer to its business premises.'" *Id.*

      B.    **Defendant's Motion for Summary Judgment**

For purposes of their motion for summary judgment, Meijer assumes that Mr. Combs has met his burden of proof and that the burden has now shifted to Meijer to show the exercise of reasonable care. DE 7-1, p. 17. As described in *Lanier*, Mr. Combs now has a rebuttable presumption of negligence and the burden is on Meijer to prove "the absence of negligence." *Lanier*, 113 S.W.3d at 437. "The proprietor is guilty of negligence only if he fails to use reasonable

4

care under the circumstances to discover the foreseeable dangerous condition and to correct it or to warn customers of its existence." *Id.*

Meijer makes much of the fact that hospital admission personnel listed the time of the accident as "18:00" (6:00 p.m.), apparently based on what Mrs. Combs told them when she was admitted at 7:10 p.m. Meijer then notes that Mr. Liebengood walked by the accident location before clocking back in at 5:57 p.m. According to Meijer, the facts that the floor was inspected eight times in forty-five minutes, including one inspection approximately three minutes before Mrs. Combs fell, are sufficient evidence of the exercise of reasonable care in the maintenance of its premises to rebut the presumption of negligence and entitle it to judgment as a matter of law. Meijer also relies heavily on the fact that Plaintiff has no evidence that any Meijer employee caused the liquid to be on the floor and no evidence regarding how long it had been there.

One difficulty with Meijer's argument is that its own employees place the time of the accident at 6:15 p.m., not 6:00. DE 7-1, p. 8 (Endfinger received a call at 6:15 p.m. that a woman had fallen); DE 7-6 (Craycraft accident report, "Time of Incident 06:15 pm"). Viewing the evidence in the light most favorable to the non-moving party, the Court will assume the accident happened at 6:15 p.m. Additionally, Craycraft and Endfinger testified that the grocery center aisle is the "most traveled area in the store" or "one of the highest traffic areas of the store." DE 7-1, pp. 7-8. It was also a busy Saturday. Craycraft, DE 7-1, p. 6.

A jury could certainly believe that all of Meijer's training and its employees' activities on the day in question did constitute reasonable care to keep its premises safe. On the other hand, the jury could conclude that no inspection of the most traveled area in the store adjacent to self-serve grocery products for more than fifteen minutes on a busy day is not reasonable care to maintain the premises in a safe condition. Additionally, three of the employees who observed the area within an hour of the accident were on breaks. A jury could believe that employees on breaks are not as diligent about floor inspections as they are when they are on the clock. It is the opinion of this

5

Court that Meijer has not overcome the presumption of negligence as a matter of law and that there is a fact question for the jury regarding the reasonableness of care exercised by Meijer. That is not to say that Mr. Combs will have an easy job persuading the jury to hold Meijer liable under the circumstances. He has simply brought forward enough proof at this time to avoid summary judgment.

The Court also disagrees that *Stump v. Wal-Mart Stores, Inc.*, 946 F. Supp. 492 (E.D. Ky. 1996) has any application in this case. *Lanier* changed the landscape after *Stump*. Additionally, the standard expressed in *Stump* was questioned in Justice Johnstone's dissent in *Lanier*. *Lanier*, 99 S.W.3d at 438.

### III. CONCLUSION

**IT IS ORDERED** that Defendants' motion for summary judgment [DE 7] is **DENIED**.

This September 10, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge